---

(28 Misc. Rep. 314.)

## In re HUNTER.

(Supreme Court, Special Term, Albany County. July, 1899.)

1. EVIDENCE OF DEDICATION FOR PUBLIC STREET.
      A landowner purchased land situated in a city, and caused a map of the property to be made and filed, showing a street through the land. The owner conveyed several lots described with reference to the map and the street. Later the city purchased from him a portion of the land for a reservoir, including a part of this street. Subsequently the owner caused a new map of the property to be made, showing an avenue across the property, taking the place of the one occupied by the reservoir. He was not assessed for taxes on the old street nor on the new one. The public used the street for about 20 years, and the city had sidewalks constructed on it. Held, that the evidence showed an irrevocable dedication of the land for a public street.

2. DEDICATION—REVOCATION AFTER DEDICATION IS COMPLETE.
      Where land has been dedicated by the owner for a street, and the dedication has been made complete by nearly 20 years' usage by the public, it cannot be revoked by fencing up the street.

Petition by Margaret A. Hunter, individually and as trustee, to vacate an assessment for local improvement. Dismissed.

Worthington Frothingham, for petitioner.
John A. Delehanty, Corp. Counsel, for defendant.

CHESTER, J. This is a proceeding to vacate an assessment for a local improvement. Under the charter of the city of Albany the common council is authorized to direct the construction of sewers in any street in the city, the expense thereof to be assessed upon

the property deemed to be benefited. Section 25, tit. 3, c. 298, Laws 1883, as amended by section 8, c. 286, Laws 1891. By an ordinance duly approved May 18, 1898, it authorized the construction of a sewer in Rawson and Third streets, which resulted in the assessment upon the petitioner's property, of which she complains. The case turns principally upon the question as to whether or not the place called "Rawson Street" in the ordinance, and where a part of the sewer was constructed, was in fact a public street, or was private property. The premises in dispute, together with considerable surrounding property, were purchased in 1861 by Andrew R. Hunter, the husband of the petitioner, who died in 1893. In 1873 he caused a map of this property to be made, which was filed in the county clerk's office in 1877. This map shows a street called "Rawson Street," 70 feet in width, leading from Central avenue northerly to lands of the New York Central Railroad Company, crossing streets indicated upon the map as "Hunter Avenue," "Second Street," "Third Street," and "Lumber Street" (the latter street being now known as "Livingston Avenue"). The evidence shows that, after the making of this map, Mr. Hunter conveyed several lots described with reference to the map, and with reference to Rawson street as there laid down. In 1875 the city purchased from Mr. Hunter a considerable tract of land for a public reservoir, and upon the construction of the reservoir the portion of Rawson street, as indicated upon the map, lying between Hunter avenue and Third street, was closed; leaving, however, those portions of Rawson street shown upon the map between Central and Hunter avenues and between Third and Lumber streets the same as before. It also appears that from 1875 to 1890 the assessors of the city made their assessments of the property of Mr. Hunter on Rawson street with reference to the lots and to that street as laid down upon the map, and that during those years he was not assessed and did not pay any tax upon the lands designated as "Rawson Street" thereon. In July, 1889, Mr. Hunter caused a new map of a portion of his property to be made, showing an open way 66 feet in width leading from Third street to Livingston avenue, but not designated thereon as a street or by any name, but showing this way as leading at a right angle from Livingston avenue, instead of from Third street, as Rawson street had been indicated upon the map of 1873. The southerly end of this open way at Third street upon the map of 1889 was very nearly in the same place as was Rawson street upon the map of 1873 at that location, but the northerly end of this open way at Livingston avenue was carried a little more than its width further west than the place indicated as Rawson street on the map of 1873. There is no proof that the map of 1889 was ever filed in the county clerk's office, but the testimony shows that subsequent to its date, and down to the death of Mr. Hunter, the assessments of this property were changed to correspond with the new map, and that he paid his assessments so made. This indicates very clearly not only that the new map or the subdivisions thereon shown had been brought to the attention of the assessors, but the knowledge and the agency of Mr. Hunter with reference to the change. These changed assessments did not include, and

Mr. Hunter did not thereafter pay, any tax upon the open way or street shown upon the map of 1889. Since Mr. Hunter's death the assessments have continued in the same way against the petitioner, and she has received a like exemption of this open way from taxation. In 1890 Mr. Hunter and his wife conveyed the lot on the southwesterly corner of Livingston avenue and this open way, as appearing upon the map of 1889, and one-half of the lot next adjoining thereto on the south, as shown on such map, to Robert Burns, and described such premises as being bounded "east by the west line of Rawson street." So here is a designation by him of the open way on his map of 1889 as a street, and as Rawson street. The evidence shows the use of the open way indicated upon the map of 1889 by pedestrians and vehicles as a public street for from 10 to 15 years past, during which time it has been fenced upon each side along lines corresponding with those appearing upon the map. During this time it has been open to, and in fact used very largely by, the public, in passing between Third street and Livingston avenue, and has furnished the only avenue communicating with those streets, between Colby street and New York Central avenue. It is also shown that Rawson street has also been known in that neighborhood as a public street for 25 years past. The photographs in evidence show a well-beaten road or carriageway over this open way, of the same general character as that of the connecting streets. The common council in June, 1871, adopted a resolution that the next street west of New York Central avenue, "running from Central avenue north to Lumber street, be called 'Rawson Street.'" It also passed a resolution in December, 1879, directing the street commissioner to "cause a cross walk to be placed on Rawson street at Central avenue." Under the charter the common council are constituted commissioners of highways for the city. Laws 1883, c. 298, tit. 3, § 14. It does not appear that there was any ordinance passed until 1898 by the common council for a formal acceptance as a public street of the strip of land shown upon the map of 1889, under the statute authorizing the common council to accept streets that have been thrown open to the public use, and have been so used for five years continuously. Laws 1891, c. 286, tit. 17, § 20. On May 16, 1898, such an ordinance was introduced for passage, and it was passed on June 6th following. Two days before the passage of this ordinance the petitioner caused a fence to be erected at each end of this strip of land; one crossing it at the north line of Third street, and the other at the south line of Livingston avenue. These fences remained until the 7th day of July following, when they were removed by the city authorities.

"It seems to me that the intention on the part of Mr. Hunter to dedicate what has been called "Rawson Street" to the public as a street is clearly apparent from the facts above recited. Indeed, so far as it was shown as a street upon the map of 1873, this is not seriously controverted by the petitioner. But the claim in her behalf is that after the sale to the city by Mr. Hunter of the lands for the reservoir, and the closing of a portion of the street caused by the erection of that work, the effect was to give Mr. Hunter the right

to regard the entire street, except that part between Central and Hunter avenues, as abandoned. It is also contended by the petitioner that the fences erected at the ends of the strip of land shown on the map of 1889 were effective as an assertion of her possession of the land, and to revoke any pretended dedication of the same to the public as a street; they having been erected prior to the formal acceptance by the city of the land as a street. With respect to the first of these contentions, the evidence shows very clearly, to my mind, that Mr. Hunter never regarded any part of the street shown upon the map of 1873 abandoned, except that covered by the reservoir, and such portions of it as fell outside of the street lines when he changed the angles and narrowed the street as it appears on the map of 1889. Nor, under the law, in my opinion, did the erection of the fences across the street have the effect contended for by the petitioner. When Mr. Hunter sold lots on Third street and elsewhere with reference to the map of 1873, by deeds recognizing the existence of Rawson street, between Third and Lumber streets, the grantees and the public having relations with them obtained rights to the use of Rawson street as shown upon the map; and when he, in 1889, changed the location of that street between those points by having its westerly end deflected a little more than its width westerly of the location shown upon the earlier map, it showed an intention on the part of Mr. Hunter to dedicate that street in its slightly changed position to his grantees and to the public in the place of the street indicated upon the map of 1873. It was a recognition of his obligation under the prior dedication. It did not show an intention to abandon the street, but rather to slightly change its position for purposes of his own. It seems, as the rights of these grantees and the public were respected, that the change was acquiesced in by all concerned. The acquiescence on the part of the city was evidenced by the change in the assessments at that locality, and by the public in the use of the street in its changed location. So that, on all the facts in the case, it appears to me that the dedication by Mr. Hunter, and the intent on his part to dedicate the way shown upon the map of 1889 to the public as a street, are clearly shown. Nor do I think the erection by the petitioner of the fences across this street upon the eve of the passage of the ordinance accepting it as a street, and after the public had used it for so many years, was effective to recall the dedication made by Mr. Hunter. I think that under the authorities, and the circumstances appearing in the proof, the dedication was irrevocable. Elliott, Roads & S. 89, 119; 24 Am. & Eng. Enc. Law, 11. But, whether it was irrevocable or not, the acceptance of the dedication had been complete, by long-continued public use, long before the erection of the fences, and that was sufficient. People v. Loehfelm, 102 N. Y. 1, 5 N. E. 783; Holdane v. Village of Cold Springs, 21 N. Y. 478; Elliott, Roads & S. 117. For this reason the ordinance passed by the common council to accept this property as a street was not essential for the protection of the right of the public to its easement in the street. As the sewer was constructed in public streets, the assessment therefor should not be vacated.

I have examined the other objections urged against the validity

of the assessment, but none of them appear to me to be sufficient to relieve the petitioner from the burden laid upon her property. The petition must be dismissed, with costs to the city of Albany.

Petition dismissed, with costs to city of Albany.